**No. 25-291**

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

KENNETH CHARLES SHILLING,

*Plaintiff-Appellant*,

v.

COUNTY OF SAN DIEGO; KELLY A. MARTINEZ, IN HER OFFICIAL CAPACITY AS SHERIFF OF COUNTY OF SAN DIEGO,

*Defendants-Appellees*.

On Appeal from the United States District Court
for the Southern District of California
D.C. No.: 24-cv-01047-CAB-DDL
Hon. Cathy Ann Bencivengo

---

## APPELLANT'S OPENING BRIEF

---

**Gary W. Gorski** (SBN 166526)
*Attorney at Law*
25025 Blue Ravine Road
#112-113
Folsom, CA 95630
Cell: (775) 720-1000
CivilRightsAttorney@BlackWolfLaw.com

*Attorney for Plaintiff-Appellant Schilling*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTIONAL STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF ISSUES PRESENTED FOR REVIEW. . . . . . . . . . . . . . . . . . . 4

    1.    Punishment for Association and Forced Waiver of Constitutional Rights. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    2.    First Amendment Violation: Punishment (loss of Second Amendment Right) based upon Association . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    3.    Dismissal of First Amendment Association Claim Without Addressing Specific Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    4.    "Stigma-Plus" Hybrid Constitutional Violation . . . . . . . . . . . . . . . . . 5

    5.    Eleventh Amendment Immunity Misapplied . . . . . . . . . . . . . . . . . . . 5

    6.    Failure to Apply the *Kohn* Test Before Granting Eleventh Amendment Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    7.    Local Policy and County Liability Under *Monell*. . . . . . . . . . . . . . . 6

    8.    Improper Dismissal of the County Under *Monell*. . . . . . . . . . . . . . . 6

    9.    Second Amendment Violation: Unlawful Revocation Under *Bruen* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    10.    The District Court's ruling undermines *Monell* and erodes federal protections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    11.    Mootness and Ongoing Constitutional Injury

    12.    Erroneous Mootness Finding Despite Ongoing Revocation and Stigma. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    13.    Failure to Join or Obtain State Position. . . . . . . . . . . . . . . . . . . . . . . 7

    14.    Denial of Joinder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    1. Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    2. Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    I.    THE SHERIFF'S "GUILT BY ASSOCIATION" POLICY IMPOSES AN UNCONSTITUTIONAL CHOICE BETWEEN FIRST AND SECOND AMENDMENT RIGHTS-A HYBRID VIOLATION PROPERLY FRAMED UNDER ANALOGOUS "STIGMA-PLUS" JURISPRUDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

        A.    The District Court Erred in Dismissing Plaintiff's First Amendment Claim, as Punishing Lawful Association Is a Per Se Constitutional Violation . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.    Plaintiff Is Forced into an Unconstitutional Choice: A Hybrid First and Second Amendment Violation . . . . . . . . . . . . . . . . . 26

        C.    The Hybrid Stigma-Plus Revocation Inflicts a Permanent and Constitutionally Baseless Punishment . . . . . . . . . . . . . . . . . . 28

    II.    THE SHERIFF'S UNILATERAL CLASSIFICATION OF BOOZEFIGHTERS AS A CRIMINAL STREET GANG REFLECTS A PURELY LOCAL POLICY-DISTINGUISHING THIS CASE FROM THE DISTRICT COURT'S RELIANCE ON NON-BINDING DISTRICT COURT DECISIONS ON ELEVENTH AMENDMENT IMMUNITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

        A.    Local "Criminal Gang" Designation Separates This Case from Those Relied Upon by The District Court . . . . . . . . . . . . . . . 38

        B.    The District Court Erred in Dismissing Claims Under Eleventh Amendment Immunity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

        C.    *Kohn*'s Three-Factor Test Controls, Not *Scocca* . . . . . . . . . . . 41

            i.    Legislative Intent: Sheriffs Are County Officers . . . . . 41

      ii.      Degree of State Control: Zero Oversight of the Gang Classification Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

      iii.     Financial Liability: Entirely County-Funded . . . . . . . . 46

III.    MISCHARACTERIZING SHERIFF MARTINEZ AS A STATE ACTOR UNDERMINES *MONELL* AND INVITES SYSTEMIC § 1983 EVASION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

IV.    PLAINTIFF'S CLAIM REMAINS JUSTICIABLE AND IS NOT MOOT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

V.    PLAINTIFF'S CLAIM FOR MONETARY DAMAGES FORECLOSES ANY ARGUMENT OF MOOTNESS . . . . . . . . . . 52

VI.    THE DISTRICT COURT ERRED IN DENYING JOINDER OF THE STATE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Form 8. Certificate of Compliance for Briefs . . . . . . . . . . . . . . . . . . . . . . . . . 60

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

## **TABLE OF AUTHORITIES**

### *Cases*

*Biodiversity Legal Found. v. Badgley,*
309 F.3d 1166 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 54

*California v. Trump,*
963 F.3d 926 (9th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*California v. U.S. Dep't of Health & Human Servs.,*
941 F.3d 410 (9th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Cholla Ready Mix, Inc. v. Civish,*
382 F.3d 969 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*District of Columbia v. Heller,*
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ellis v. City of La Mesa,*
990 F.2d 1518 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.,*
349 F.3d 1169 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Healy v. James,*
408 U.S. 169 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25, 27, 28

*Kohn v. State Bar of California,*
87 F.4th 1021 (9th Cir. 2023). . . . . . 1, 5, 6, 9, 13, 14, 32, 34-35, 40, 41, 46, 47, 57

*Markowitz v. City of Burbank,*
2024 U.S. Dist. LEXIS 73037 (C.D. Cal. Apr. 21, 2024) . . . . . . . . . . . . . . . 33, 34

*McDonald v. City of Chicago,*
561 U.S. 742 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Micomonaco v. Washington,*
45 F.3d 316 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Monell v. Department of Social Services,*
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 9, 14, 32-34, 38, 47-49, 57

*NAACP v. Alabama*,
357 U.S. 449 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*Nev. Land Action Ass'n v. U.S. Forest Serv.*,
8 F.3d 713 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Nordstrom v. Dean,*
No. CV 15-7607
DMG (FFMx), 2016 WL 10933077 (C.D. Cal. Jan. 8, 2016) . . . . . . . . . . 33, 34, 36

*N.Y. State Rifle & Pistol Ass'n v. Bruen*,
597 U.S. 1 (2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Paul v. Davis*,
424 U.S. 693 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 29

*Perry v. Sindermann*,
408 U.S. 593 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 2, 24, 19, 26

*Prodanova v. H.C. Wainwright & Co., LLC*,
993 F.3d 1097 (9th Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Roberts v. U.S. Jaycees*,
468 U.S. 609 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 27

*Scocca v. Smith*,
912 F. Supp. 2d 875 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . 9, 13, 33-36, 40, 41, 47

*Speiser v. Randall*,
357 U.S. 513 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*WMX Techs., Inc. v. Miller*,
197 F.3d 367 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

### *Statutes & Rules*

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

v

Cal. Penal Code § 186.20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 37, 39, 44

Cal. Penal Code § 26150 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 48

Cal. Penal Code § 26160 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41, 48

Cal. Penal Code § 26190 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43, 44

Cal. Penal Code § 26195 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 42, 48

Cal. Penal Code § 26202 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 48

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fed. R. Civ. P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 59

### *Constitutional Provisions*

U.S. Const. amend. I. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. XI (Eleventh Amendment). . . . . . . . . . . . . . . . . . . . . *passim*

U.S. Const. amend. XIV (Fourteenth Amendment). . . . . . . . . . . . . . . . . . 5, 19, 29

## **<u>INTRODUCTION</u>**

Plaintiff Kenneth Charles Shilling challenges the revocation of his CCW (Carry Concealed Weapon) license by Defendant San Diego County Sheriff Kelly A. Martinez, arguing it violates his First and Second Amendment rights. The revocation was based on an internal, unpublished policy labeling the Boozefighters Motorcycle Club ("BMC") as a "criminal street gang," despite no evidence of criminal conduct on the part of the Club or Plaintiff. (See ER-43, **Exhibit 1**, Letter of Revocation; ER-31)

The District Court erred in treating the Sheriff as an arm of the State under the Eleventh Amendment, thereby dismissing both the Sheriff and the County as defendants. (Orders, ER-13; ER-4) This holding conflicts with *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which affirm local governmental liability under § 1983.

Furthermore, the Sheriff's revised "dangerousness" standard—replacing the repealed "good moral character" requirement because of *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)—continues to penalize lawful association through a subjective, discretionary policy. Because Plaintiff remains stigmatized and his revoked status continues to impede his Second Amendment rights, he seeks damages, declaratory and injunctive relief, and reinstatement of his CCW license.

1

This case also presents a hybrid constitutional issue in which Plaintiff's Second Amendment right to carry a firearm for self-defense is denied based solely on his First Amendment right to associate with a lawful motorcycle club. The revocation of his CCW permit—explicitly based on his "association" with the Boozefighters Motorcycle Club—represents not just reputational harm, but a state-sanctioned punishment of constitutionally protected association, coupled with the deprivation of a fundamental right: the right to bear arms.

This is not a conventional "stigma-plus" claim. Rather, it presents a substantive hybrid violation of both the First and Second Amendments—actionable under 42 U.S.C. § 1983—and draws upon principles developed in "stigma-plus" jurisprudence.

At the core of this case lies an unconstitutional ultimatum: Plaintiff must either abandon his right to associate with the Boozefighters Motorcycle Club or forfeit his Second Amendment right to carry a firearm for self-defense. The government cannot lawfully condition the exercise of one constitutional right on the surrender of another. See *Perry v. Sindermann*, 408 U.S. 593 (1972).

As the Supreme Court has explained: "For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to 'produce a result which [it] could not command

2

directly.'" *Speiser v. Randall*, 357 U.S. 513, 526 (1958); *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Such interference with constitutional rights is impermissible.

This is not a situation where the government applied neutral criteria to a firearms licensing decision. Instead, it leveraged its discretionary authority to revoke a valid CCW solely based on Plaintiff's First Amendment-protected association—effectively tethering his gun rights to his silence, conformity, or disavowal of a lawful group.

This choice is no choice at all—it is coercion dressed up as policy. The First and Second Amendments operate independently and must be enjoyed simultaneously. The Constitution does not permit public officials to weaponize one right to dismantle another.

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Plaintiff brought claims under 42 U.S.C. § 1983 for violations of the First and Second Amendments to the United States Constitution. On October 29, 2024, the District Court entered its order dismissing Plaintiff's complaint and denying preliminary declaratory and injunctive relief. (ER-13) On December 17, 2024, the District Court entered its order denying reconsideration and joinder of the State of California. (ER-4) Judgment dismissing the action was issued the same day. (ER-

3) Plaintiff timely filed this appeal on January 13, 2025. (ER-59) This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**1. Punishment for Association and Forced Waiver of Constitutional Rights**

Did the district court err in dismissing Plaintiff's First Cause of Action under the First Amendment, where the revocation of his concealed-carry license—based solely on lawful membership in a motorcycle club—constituted unconstitutional punishment for protected association, effectively forcing him to relinquish his Second Amendment right despite the absence of any criminal conduct by Plaintiff or the Club, and where Plaintiff has maintained a clean record since his birth in 1962 and a long-standing, exemplary career with a public school district?

**2. First Amendment Violation: Punishment (loss of Second Amendment Right) based upon Association**

Did the district court improperly dismiss Plaintiff's First Amendment claim (First Cause of Action), where his CCW was revoked explicitly because of his lawful membership in the Boozefighters Motorcycle Club, absent any evidence of individual misconduct or criminality, even though there would be a "chilling" effect and "stigma" on that association *per se*?

**3. Dismissal of First Amendment Association Claim Without Addressing Specific Allegations**

4

Did the District Court err by dismissing Plaintiff's First Amendment claim even though the CCW revocation—imposed solely because of his lawful membership in a motorcycle club and unsupported by any criminal conduct—clearly alleges punishment for association rather than an inability to associate, and thus rests on penalizing his group affiliation rather than any individual wrongdoing?

4. **"Stigma-Plus" Hybrid Constitutional Violation**

Where the Sheriff labeled Plaintiff a "criminal street gang" member and revoked his CCW license based solely on lawful association, did the district court err in overlooking that this action inflicted both reputational harm and the deprivation of a fundamental right—constituting a hybrid "stigma-plus" violation under 42 U.S.C. § 1983, grounded in the First and Second Amendments rather than the Fourteenth?

5. **Eleventh Amendment Immunity Misapplied**

Did the district court improperly treat the San Diego County Sheriff as a State actor, granting Eleventh Amendment immunity and dismissing the claims against both the Sheriff and the County, despite precedent establishing that sheriffs act as county policymakers under 42 U.S.C. § 1983?

6. **Failure to Apply the *Kohn* Test Before Granting Eleventh Amendment Immunity**

5

Did the District Court err in granting Eleventh Amendment immunity to Defendant Kelly Martinez, an elected County Sheriff, without applying or analyzing the three-factor test required under *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023)?

### 7. Local Policy and County Liability Under *Monell*

Where the Sheriff's CCW "revocation" policy was locally enacted, not mandated by state law, and any judgment would be paid by the County, did the court err in extending Eleventh Amendment immunity and dismissing *Monell* claims against the County?

### 8. Improper Dismissal of the County Under *Monell*

Did the District Court err in dismissing the County of San Diego on the ground that the Sheriff was acting on behalf of the State, thereby leaving no defendant liable under 42 U.S.C. § 1983, contrary to the Supreme Court's holding in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which allows municipal liability for constitutional violations?

### 9. Second Amendment Violation: Unlawful Revocation Under *Bruen*

In light of *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), does revoking a concealed-carry license based solely on group association—unconnected to personal conduct or dangerousness—violate the Second Amendment?

6

**10. The District Court's ruling undermines *Monell* and erodes federal protections**

Did the District Court err in classifying the Sheriff as a "state actor" entitled to Eleventh Amendment immunity—thereby circumventing Monell liability—when the Sheriff's CCW revocation policy was purely local in nature, derived solely from county authority, and creates a dangerous precedent whereby all California sheriffs could shield unconstitutional conduct from § 1983 scrutiny by mischaracterizing local policies as "state" action, effectively denying plaintiffs any remedy for constitutional violations?

**11. Mootness and Ongoing Constitutional Injury**

Did the district court err in finding mootness based on statutory changes, where (a) the revised "dangerousness" standard still allows revocation based on association, and (b) Plaintiff remains stigmatized and burdened by the prior "gang" classification in official records, impairing future licensure and chilling his rights?

**12. Erroneous Mootness Finding Despite Ongoing Revocation and Stigma**

Did the District Court err in finding that Plaintiff's Second Amendment claim was moot, where his CCW license remains revoked, the stigma permeates future CCW applications, and the Sheriff's revised "demonstrated dangerousness" policy continues to allow discretionary denial based on association?

**13. Failure to Join or Obtain State Position**

7

Assuming arguendo the Sheriff was acting as a State official, was it error to dismiss the case without joining the State of California or seeking its position—thereby depriving Plaintiff of any remedy despite ongoing constitutional violations?

**14. Denial of Joinder**

Did the District Court err in denying Plaintiff's motion to join the State of California as an indispensable party under Fed. R. Civ. P. 19 where the ruling left Plaintiff without a remedy for alleged constitutional violations?

## STATEMENT OF THE CASE

### 1. Procedural Background

On June 17, 2024, Plaintiff filed suit in the U.S. District Court for the Southern District of California, alleging that the revocation of his CCW license violated his rights under the First and Second Amendments. (ER-32; ECF No. 1.) He named two Defendants: (1) the County of San Diego, and (2) Kelly Martinez, in her official capacity as Sheriff of San Diego County. (ER-32; ECF No. 1.)

Defendants moved to dismiss, asserting, among other things, that (a) the County could not be liable because the Sheriff was allegedly a state actor for CCW issuance, and (b) the Sheriff was immune from suit under the Eleventh Amendment. (ER-64, Dkt. # 8)

8

Plaintiff filed a motion for a Temporary Restraining Order, Preliminary And/Or Permanent Injunction for the return of his CCW. (ER-64, Dkt. # 9)

The District Court denied Plaintiff's motion and granted the motion to dismiss on two grounds: first, it held that Sheriff Martinez acted as an agent of the State, entitling her to Eleventh Amendment immunity and shielding the County from *Monell* liability; second, it found Plaintiff's First Amendment claim insufficiently pled. (ER-13, Order: Granting Motion to Dismiss And Denying Motion For Temporary Restraining Order And Preliminary Injunction)

Plaintiff moved for reconsideration, citing the Ninth Circuit's decision in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023). Plaintiff argued that *Kohn* overruled the District Court's reliance on *Scocca v. Smith*, 912 F. Supp. 2d 875 (N.D. Cal. 2012), which used a now-outdated jurisprudence. Plaintiff emphasized that under *Kohn*'s controlling three-factor standard, sheriffs retain significant local authority and do not operate as arms of the state. The District Court denied reconsideration, refused to allow joining the State of California as a defendant, and declined to certify an interlocutory appeal. (ER-4, Order Denying Motion For Reconsideration) On the same day, judgment was entered dismissing the case. (ER-3) This appeal followed. (ER-59)

## 2. Factual Background

9

Plaintiff Kenneth Charles Shilling is a law-abiding citizen, born in 1962, with no criminal history, residing in Chula Vista, California. He is a respected member of his community, having worked for many years in the Chula Vista Elementary School District and maintained an untarnished reputation. (ER-24, Shilling Decl. ¶ 1-3; ER-33-36, Compl. ¶¶ 2, 16-17, 23-26.)

Outside of work, Mr. Shilling is a longtime member of the Boozefighters Motorcycle Club—a lawful, historic organization founded in 1946 by World War II veterans. The club is nationally recognized for its cultural significance, charitable efforts, and core values of family, work, and community. Despite widespread misconceptions surrounding motorcycle clubs, the Boozefighters have never been classified as a "criminal street gang," nor have they ever been implicated in organized criminal activity, RICO violations, or gang-related behavior. Their positive reputation is supported by public records and AI-driven internet analysis (ER-44, 50, Compl. **Exhibits 2 & 3.**), showing no evidence to justify such a designation. Public records, as well as independent reviews, confirm the absence of any credible basis for characterizing the club as criminal in nature. (ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3".**)

On June 27, 2022—four days after the Supreme Court's decision in *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022)—Plaintiff was issued a

10

CCW permit by then-Sheriff Anthony Ray under an objective standard consistent with Bruen. (ER-24, Shilling Decl. ¶¶ 4–5; ER-35, Compl. ¶¶ 18–20.)

After taking office, Sheriff Kelly A. Martinez implemented a new, subjective "dangerousness" standard functionally equivalent to the repealed "good moral character" requirement, permitting discretionary revocation based on association. (ER-36, Compl. ¶ 22, **Exhibit "1"**.) The policy is unpublished and lacks transparency, enabling arbitrary enforcement. (ER-26, Shilling Decl. ¶ 10; ER-28, ¶ 23.) However, the policy was published in a written letter to Plaintiff from Defendant Martinez which stated:

> Has a pattern of or propensity for criminal conduct, as demonstrated by anything in the application or investigation for a license. This includes, but is not limited to, evidence of criminal behavior or a close nexus to a criminal gang. In making this determination, the Sheriff's Department shall use an objective inquiry, considering the facts and circumstances known at the time of the application or through the investigation.

(ER-36, Compl. ¶ 22, **Exhibit "1"** is a letter dated December 4, 2023, from Kelly A. Martinez, Sheriff to Plaintiff revoking Plaintiff's CCW and stating the "good moral character" policy in writing; see also Shilling Decl. ER-25, ¶ 9, ER-31, **Exhibit "1"**.)

On December 4, 2023, Plaintiff received notice that his CCW permit was revoked solely due to his membership in the Boozefighters, which the Sheriff's

11

Department labeled a "criminal street gang." (ER-25, Shilling Decl. ¶¶ 6–7, 9, 11; ER-36, Compl. ¶¶ 22, 27–28; Ex. 1.) No evidence of wrongdoing was cited. Plaintiff has no criminal history and had lawfully possessed a CCW. (ER-24, Shilling Decl. ¶ 1-3; ER-33-36, Compl. ¶¶ 2, 16-17, 23-26.)

The consequences for Mr. Shilling have been severe. The revocation of his CCW permit not only stripped him of his Second Amendment right to self-defense, but also inflicted reputational harm, professional stigma (ER-26-28, Shilling Decl. ¶¶ 15-18, 21, 24; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**, ER-41 ¶ D.), and emotional distress. It falsely implied criminal conduct where none exists and created a record that may impair his ability to obtain a CCW permit in other jurisdictions in the future. (ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**.)

Plaintiff received no opportunity to contest the allegations before revocation, which also creates a stigma. (ER-26, Shilling Decl. ¶¶ 15–20; ER-37, Compl. ¶¶ 29–30, ER-41, ¶ D.) The consequences for Plaintiff have been severe. The revocation of his CCW permit not only stripped him of his Second Amendment right to self-defense, but also inflicted reputational harm, professional stigma, and emotional distress. It falsely implied criminal conduct where none exists and created a record that will impair his ability to obtain a CCW permit in other jurisdictions in the future. (ER-26, Shilling Decl. ¶¶ 15–18.)

12

Defendants' actions set a dangerous precedent. If allowed to stand, sheriffs across California could revoke CCW permits based solely on unfounded assumptions about lawful associations—effectively chilling First and Second Amendment rights under the guise of discretionary moral judgments. The Constitution does not permit such vague and unsubstantiated intrusions into protected liberties. (ER-32, Compl.)

Plaintiff seeks: (1) reinstatement of his CCW permit; (2) expungement of all records related to the revocation; and (3) any additional relief necessary to protect his constitutional rights. (ER-26, Shilling Decl. ¶¶ 14–15, 21; ER-37, Compl. ¶¶ 30–32; ER-41 ¶ D.)

## SUMMARY OF THE ARGUMENT

The District Court's grant of Eleventh Amendment immunity to a county sheriff, combined with its simultaneous dismissal of the county itself, leaves Plaintiff without a remedy for the infringement of his constitutional rights. That result is irreconcilable with both Supreme Court precedent and this Circuit's updated framework in *Kohn*.

First, the District Court erroneously relied on *Scocca v. Smith*, 912 F. Supp. 2d 875 (N.D. Cal. 2012), which used an outdated test for determining whether an entity is an "arm of the state." In *Kohn*, the Ninth Circuit replaced the older approach with a uniform three-factor test that focuses on legislative intent, degree

13

of state control, and potential liability of the state treasury. *Kohn v. State Bar of California*, 87 F.4th 1021, 1031 (9th Cir. 2023). Properly applied here*, Kohn* shows that sheriffs act as county officials when administering local CCW licensing because: (1) the state legislature intended to delegate authority to local counties, (2) local sheriffs operate free from state oversight in day-to-day CCW decisions, and (3) any financial liability does not expose the state treasury. The District Court failed to consider these points.

Second, by treating the Sheriff as a "state actor," the District Court concluded that the County of San Diego could not be liable. Yet this approach undermines *Monell v. Department of Social Services*, 436 U.S. 658 (1978), effectively insulating local governments from § 1983 liability for unconstitutional policies or practices within sheriff's departments. If the Sheriff is truly an arm of the state, the State of California must be joined to address the constitutional issues. Absent that joinder, the entire framework for relief collapses, and Plaintiff is left remediless.

Third, the District Court suggested that Plaintiff's claims might be moot or nonjusticiable because the statutory provision for "good moral character" was repealed. But the new standard set forth by S.B. 2—"reasonably likely to be a danger"—provides a similar, if not broader, scope for discretionary revocation based on associational assumptions. Plaintiff's license remains revoked, no new

14

license has issued, and no binding policy ensures that membership in a law-abiding motorcycle club will not trigger future revocations. The case is thus not moot; it is precisely the kind of dispute "capable of repetition yet evading review."

Finally, the District Court erred in dismissing Plaintiff's First Amendment claim. The revocation letter expressly cited his membership in the Boozefighters Motorcycle Club as the basis for questioning his character. Plaintiff's First Cause of Action, as alleged in the Complaint and reinforced by his declaration in support of preliminary relief, makes clear that the core of his First Amendment claim is <u>punishment</u> for association—not <u>interference</u> with the right to associate. (ER-28, Shilling Decl. ¶ 24; ER-38, Compl. ¶ 34-35.)

For these reasons, Plaintiff asks this Court to reverse the District Court's orders, direct that Eleventh Amendment immunity does not apply, and remand with instructions to proceed on the merits of Plaintiff's claims.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6). *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1105 (9th Cir. 2021). In addition, the Court reviews *de novo* whether Eleventh Amendment immunity bars a claim under 42 U.S.C. § 1983. *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004); *Micomonaco v. Washington*, 45 F.3d 316, 319 (9th Cir. 1995)("Whether a state is immune from

15

suit under the Eleventh Amendment is a question of law which we review de novo.").

"We review mootness, a question of law, de novo." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002).

"We review the issue of standing de novo. *Ellis v. City of La Mesa,* 990 F.2d 1518, 1523 (9th Cir. 1993)." *Nev. Land Action Ass'n v. United States Forest Serv.,* 8 F.3d 713, 715 (9th Cir. 1993). "We review the existence of Article III standing *de novo. See California v. U.S. Dep't of Health & Human Servs.*, 941 F.3d 410, 420 (9th Cir. 2019). We review questions of statutory interpretation *de novo. See United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017)." *California v. Trump*, 963 F.3d 926, 935 (9th Cir. 2020).

## ARGUMENT

> The constitutional right to bear arms in public for self-defense is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U. S., at 780, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (plurality opinion). We know of no other constitutional right that an individual may exercise only after demonstrating to government officers some special need. That is not how the First Amendment works when it comes to unpopular speech or the free exercise of religion. It is not how the Sixth Amendment works when it comes to a defendant's right to confront the witnesses against him. And it is not how the Second Amendment works when it comes to public carry for self-defense.

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70-71 (2022).

Yet, in this litigation, Defendants consistently avoid confronting the true source of the problem: an undisclosed associational policy that singles out organizations—specifically, the Boozefighters Motorcycle Club—and uses that classification to revoke Concealed Carry Weapon ("CCW") licenses. Citing mootness, immunity, and alleged statutory "changes," Defendants obscure the fact that the revocation letter's rationale (ER-31; ER-43) persists unaltered and continues to be enforced outside public view. They preserve a local practice by which the Sheriff deems entire groups "criminal gangs," revoking CCWs without establishing any individual wrongdoing.

On December 4, 2023, Sheriff Kelly A. Martinez revoked Plaintiff's CCW license, labeling the Boozefighters Motorcycle Club a "criminal street gang." (See ER-43, **Exhibit 1**, Letter of Revocation; ER-31) Neither formal regulations nor published guidelines specify what evidence might justify branding an entire organization as a gang, let alone how members could challenge that classification. This secrecy undermines fair notice and permits arbitrary enforcement. Rather than defending the policy itself, Defendants invoke Eleventh Amendment immunity—insisting the Sheriff acts for the State—and mootness—claiming Senate Bill No. 2's changes purportedly eliminate the dispute.

Yet none of these legal defenses alter the County's reliance on discretionary, associational judgments forbidden by *Bruen*. The County's "demonstrated

17

dangerousness" standard perpetuates the same subjective approach that *Bruen* denounced for lacking historical or objective support. Despite the removal of "good moral character" from state law, Defendants have neither reversed the classification of Boozefighters as a gang nor restored Plaintiff's CCW. Consequently, Plaintiff—and others similarly situated—remain ensnared by a policy that no one can see, challenge, or rebut, while the Sheriff maintains unchecked authority to penalize lawful associations.

Under this cloaked standard, entire organizations like the Boozefighters are classified as "criminal gangs," allowing Defendant Sheriff Martinez to revoke CCWs without showing any individual wrongdoing. By its nature, this hidden policy—untethered to any statewide statute—undermines an individual's First Amendment right to associate lawfully while infringing upon the Second Amendment right to bear arms for self-defense. Contrary to *Bruen*'s instruction that "objective, historically grounded criteria" must guide CCW issuance, the County persists in a subjective, associational approach with no transparent or due-process mechanism for challenge. By focusing on mootness and Eleventh Amendment immunity, Defendants effectively dodge these critical constitutional questions.

## I. THE SHERIFF'S "GUILT BY ASSOCIATION" POLICY IMPOSES AN UNCONSTITUTIONAL CHOICE BETWEEN FIRST AND SECOND AMENDMENT RIGHTS—A HYBRID

## VIOLATION PROPERLY FRAMED UNDER ANALOGOUS "STIGMA-PLUS" JURISPRUDENCE

The stigma alleged in Plaintiff's complaint is not rooted in a Fourteenth Amendment due process theory. (ER-28, Shilling Decl. ¶ 24; ER-38, Compl. ¶ 34-35.) (See also, ER-26-28, Shilling Decl. ¶¶ 15-18, 21, 24; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**, ER-41 ¶ D.) Instead, Plaintiff asserts a hybrid constitutional violation—grounded in the First Amendment's protection of association and the Second Amendment's right to bear arms. The Sheriff's policy revoking Plaintiff's CCW based solely on his lawful membership in the Boozefighters Motorcycle Club is analogous to a "stigma-plus" deprivation—where the government imposes a reputational harm (stigma) coupled with a tangible legal penalty (revocation of a CCW license). See *Paul v. Davis*, 424 U.S. 693 (1976).

The "stigma" in this case arises from the Sheriff's classification of Plaintiff as affiliated with a "criminal street gang" and the revocation of his CCW on that basis—despite no underlying criminal conduct or adjudicated gang affiliation. (ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**.) This pejorative label is not supported by any adjudicatory process or statutory designation under Cal. Penal Code § 186.20, but is reported to a statewide database regarding the revocation of a CCW. See Cal. Penal Code §§ 26195,

19

26225. The "plus" is the revocation of a validly issued CCW permit, a protected right under the Second Amendment as clarified by *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022).

### A. The District Court Erred in Dismissing Plaintiff's First Amendment Claim, as Punishing Lawful Association Is a *Per Se* Constitutional Violation

Plaintiff's First Cause of Action, as set forth in the Complaint and further supported by his declaration in support of preliminary relief, makes unmistakably clear that the gravamen of his First Amendment claim is punishment for association—not interference with the ability to associate. (ER-28, Shilling Decl. ¶ 24; ER-38, Compl. ¶ 34-35.)

In the Complaint, Plaintiff alleges that his CCW was revoked "simply because of his association with the Boozefighters Motorcycle Club…" (ER-37, ¶ 27; see also ¶¶ 27–29). The Sheriff's own correspondence, **Exhibit "1"**, expressly confirms this basis. Plaintiff further alleges that Sheriff Martinez was "penalizing him for his lawful association without any evidence of illegal activity by him or the club," and that "[b]y revoking Plaintiff's CCW permit under these circumstances, Defendants have violated Plaintiff's First Amendment rights to freely associate." (ER-28, Shilling Decl. ¶ 24; ER-38, Compl. ¶ 34-35.)

This point is reiterated in Plaintiff's declaration: "I am being punished for my association." (ER-28, Shilling Decl. ¶ 24). A fair reading of the Complaint—

20

particularly when considered alongside the declaration—leaves no ambiguity: Plaintiff's First Amendment claim is based on the Sheriff's punitive action taken in direct response to his lawful association, not on any alleged restriction of his ability to continue associating with the club. While Plaintiff never claimed he was barred from associating, the express language in **Exhibit "1"** inherently carries a chilling effect—imposing a penalty for continued affiliation and signaling that such association will lead to the loss of constitutional rights. This is a textbook form of First Amendment retaliation: punishing the exercise of protected association through the withdrawal of a government-issued right, and creating a coercive pressure to abandon that association altogether.

Plaintiff also seeks equitable relief to remedy the reputational and ongoing legal harm caused by the stigma of the revocation, stating: "Equitable relief in the form of an order for the destruction of all records of Plaintiff's wrongful revocation due to the stigma it will cause with additional CCW applications in the future," citing *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1172 (9th Cir. 2010) (ER-41, Compl. D.; see also ER-26–27, Shilling Decl. ¶¶ 15, 17–18).

The record is clear: Plaintiff's First Amendment claim is grounded in being punished for his association—not in being prevented from continuing that

21

association. The District Court erred by mischaracterizing the nature of the claim and then dismissing it on that incorrect premise.

The District Court erred by mischaracterizing the nature of Plaintiff's First Amendment claim and applying the wrong analytical lens. Specifically, the Court concluded: "Plaintiff has not pleaded sufficient facts showing how Defendant Martinez's revocation of his CCW license impairs his ability to speak, advocate, or assemble such that it violates his right to expressive association." (ER-19, Order at lines 9-12, see also lines 13–16 )("Plaintiff has not pleaded any facts showing how the revocation of his CCW license prevents him from participating in those activities or associating with BMC in any way.") Compare with ER-28, Shilling Decl. ¶ 24; ER-38, Compl. ¶ 34-35, "individuals cannot be penalized for their association with groups, absent direct participation in unlawful activities." and "… penalizing him for his lawful association…" [emphasis added]

This analysis misses the thrust of Plaintiff's actual claim as plead. Plaintiff is not alleging that the revocation made it harder for him to speak or ride motorcycles or attend club events. Rather, he is alleging that he was punished because of his association with the Boozefighters Motorcycle Club—a form of retaliation for exercising a constitutionally protected right, not an impairment on the mechanics of participation.

This crucial distinction was pleaded explicitly in both the Complaint and Plaintiff's Declaration, where Plaintiff averred that:

- He was a law-abiding CCW holder with no criminal record.

- His permit was revoked because of his association with the Boozefighters.

- The revocation letter (ER-31, ER-43) stated that his membership in BMC was inconsistent with "good moral character."

- He did not engage in any individual wrongdoing (ER-24, Shilling Decl. ¶ 1-3; ER-33-35, Compl. ¶¶ 2 16-17, 21.), and BMC is not designated as a criminal street gang under California law. To the contrary, BMC is the oldest, most prestigious, motorcycle club in America, and is renowned for its historical significance and charitable contributions. (ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**.)

- Plaintiff pointed out how he was punished for his association clearly and explicitly. (ER-28, Shilling Decl. ¶ 24; ER-38, Compl. ¶ 34-35.)

Thus, Plaintiff was penalized for his association—not because the Sheriff interfered with club activities, but because he refused to renounce his affiliation. The compelled choice—disavow your club or lose your license—is precisely what the First Amendment forbids. As the Supreme Court held in *Healy v. James*, 408

23

U.S. 169, 185–86 (1972), "[t]he mere fact of association with a group that engages in protected activity is not sufficient to justify governmental intrusion."

Additionally, *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), reinforces that the government may not impose penalties simply because of protected association: "Such interference with constitutional rights is impermissible."

By demanding Plaintiff prove how the CCW revocation prevented him from participating in club activities, the Court analyzed the wrong issue. The injury is not a restriction on expressive conduct—it is punishment for the association itself. That error warrants reversal or amendment on the First Amendment claim.

The First Amendment unequivocally protects the right to freedom of association. Government action that punishes an individual solely because of his membership in a lawful organization—without any showing of individual misconduct—strikes at the heart of this protection. That is precisely what occurred here.

Plaintiff's membership in the Boozefighters Motorcycle Club, a lawful and constitutionally protected association, was the sole basis for revoking his CCW permit. There were no allegations of criminal activity, no misconduct, and no adjudication—only the Sheriff's unilateral decision to classify the group as undesirable. Such government action penalizes Plaintiff for the company he keeps, not for anything he has done. That is unconstitutional.

24

As the Supreme Court held in *Healy v. James*, 408 U.S. 169, 185–86 (1972), the state cannot deny a right or benefit solely based on one's association unless it can demonstrate that the individual's affiliation poses a legitimate threat. No such showing has been made here. (ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**.) Instead, Plaintiff was branded as "gang-affiliated" for his protected association, then stripped of a fundamental right under the Second Amendment.

This is not a close question: revoking a legal benefit for group membership alone is precisely the kind of First Amendment violation the courts have consistently condemned. See also *NAACP v. Alabama*, 357 U.S. 449 (1958); *Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984). The government may not suppress rights through guilt by association. That is the essence of constitutional infringement—and it is what occurred here.

Plaintiff's claim incorporates elements of "stigma-plus" jurisprudence with both First Amendment associational protections and the Second Amendment right to bear arms. Defendants and the District Court consistently avoid confronting the true source of the problem: an undisclosed associational policy that singles out organizations—specifically, the Boozefighters Motorcycle Club—and uses that classification to revoke Concealed Carry Weapon ("CCW") licenses. Citing mootness, immunity, and alleged statutory "changes," Defendants obscure the fact

25

that the revocation letter's rationale (ER-31; ER-43) persists unaltered and continues to be enforced outside public view. They preserve a local practice by which the Sheriff deems entire groups "criminal gangs," revoking CCWs without establishing any individual wrongdoing. This is not a neutral licensing policy—it is an enforcement mechanism punishing group identity, absent criminal conduct.

### B. Plaintiff Is Forced into an Unconstitutional Choice: A Hybrid First and Second Amendment Violation

In practice, Sheriff Martinez's policy imposes a false dichotomy: Plaintiff must either give up his constitutional right to associate with the Boozefighters or surrender his right to carry a firearm for lawful self-defense. This forced choice offends the core protections of both Amendments. The government may not lawfully condition the exercise of one right on the abandonment of another. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

"To state a claim for First Amendment retaliation against a government official, a plaintiff must demonstrate that (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." *Mulligan v. Nichols*, 835 F.3d 983, 988 (9th Cir. 2016). All elements are met here as well.

26

> According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority. See, e. g., *Gilmore v. City of Montgomery*, 417 U.S., at 575; *Griswold v. Connecticut*, 381 U.S., at 482-485; *NAACP v. Button*, 371 U.S. 415, 431 (1963); NAACP v. *Alabama ex rel. Patterson*, 357 U.S., at 462. Consequently, we have long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends. See, e. g., *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 907-909, 932-933 (1982); *Larson v. Valente*, 456 U.S. 228, 244-246 (1982); *In re Primus*, 436 U.S. 412, 426 (1978); *Abood v. Detroit Board of Education*, 431 U.S. 209, 231 (1977). In view of the various protected activities in which the Jaycees engages, see *infra,* at 626-627, that right is plainly implicated in this case.
>
> Government actions that may unconstitutionally infringe upon this freedom <u>can take a number of forms</u>. Among other things, government may seek to impose penalties or withhold benefits from individuals because of their membership in a disfavored group, e. g., *Healy v. James*, 408 U.S. 169, 180-184 (1972) … [emphasis added]

*Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984)

Here, the Sheriff used the administrative CCW process to impose a backdoor penalty on a protected association. The policy makes it plain: retain your association, lose your license. Such tethering of rights is constitutionally impermissible. The First and Second Amendments operate independently; the government cannot condition the exercise of one upon surrender of the other.

*Roberts v. U.S. Jaycees*, 468 U.S. 609 (1984); *District of Columbia v. Heller*, 554

27

U.S. 570 (2008); *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022).

### C. The Hybrid Stigma-Plus Revocation Inflicts a Permanent and Constitutionally Baseless Punishment

The revocation not only stripped Plaintiff of his CCW, but also inflicted a permanent reputational injury. The Sheriff's classification—never ratified by the State or codified in law—follows Plaintiff in every future CCW application. (ER-26-28, Shilling Decl. ¶¶ 15-18, 21, 24; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**, ER-41 ¶ D.) He must now answer "Yes" to having been revoked, and explain a gang-related rationale that was never adjudicated. This stigma alone is enough to chill both his right to associate and his right to reapply for a CCW. Courts have recognized that reputational harm, when combined with a tangible deprivation, gives rise to a viable constitutional claim. See *Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.*, 349 F.3d 1169 (9th Cir. 2003).

The result is that Plaintiff is punished not for what he has done, but for who he associates with—a group not outlawed, not criminal, and not prohibited from possessing firearms. This form of guilt-by-association is repugnant to constitutional jurisprudence. See *Healy v. James*, 408 U.S. 169, 186–87 (1972)).

The Sheriff's revocation of Plaintiff's concealed carry weapon (CCW) permit—based on knowingly false allegations that he was affiliated with a criminal

28

street gang—gives rise to a viable hybrid "stigma-plus" claim under 42 U.S.C. § 1983, consistent with the principles set forth in *Paul v. Davis*, 424 U.S. 693, 708–10 (1976), and *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 374 (9th Cir. 1999) (en banc). The government's false and unsubstantiated branding of Plaintiff as gang-affiliated constitutes a reputational harm that implies criminality, damages his standing in the community, and stigmatizes him in official databases—far more than mere defamation. Crucially, this stigmatization was paired with a concrete legal consequence: the revocation of Plaintiff's validly issued CCW permit in violation of *Bruen.* The Second Amendment protects an individual's right to carry a firearm in public for self-defense. Once such CCW is granted, such a permit cannot be revoked based solely on unsupported accusations. The Sheriff's actions—combining reputational injury with the deprivation of a constitutional right—satisfy the "stigma-plus" threshold and constitute a hybrid constitutional violation under both the First and Second Amendments, properly actionable under § 1983.

In its Order (ER-18, line 24), the District Court observed that freedom of association falls into two categories: intimate association under the Fourteenth Amendment and expressive association under the First Amendment. The Court then assumed—based on Plaintiff's complaint—that Plaintiff was proceeding under the expressive association prong and concluded that he failed to demonstrate

how revocation of his CCW license impaired his ability to speak, advocate, or assemble. This reading, however, mischaracterizes the nature of Plaintiff's claim and overlooks the broader constitutional injury.

According to the Complaint, Plaintiff's First Amendment claim is grounded in the unconstitutional punishment imposed solely for his lawful association with the Boozefighters Motorcycle Club—not merely a chilling effect, but actual harm. There was not fact before the District Court as to any unlawful conduct and Plaintiff specifically challenges the false and unsupported designation of the Boozefighters as a "criminal street gang." (ER-24, Shilling Decl. ¶¶ 2–3; ER-34–37, Compl. ¶¶ 17, 23–26; **Exhibits. 2 & 3**.)

As a direct result of the CCW revocation, Plaintiff's name is now flagged in official law enforcement databases and CCW registries. This means that every future permit application—whether in California or another state—will be tainted by the stigma of a prior revocation linked to an alleged gang affiliation. (ER-28–29, Shilling Decl. ¶¶ 18–23.) Plaintiff is thus doubly harmed: first, by the loss of a lawfully issued license, and second, by the reputational damage embedded in official records. Unless the revocation is overturned or expunged, the punishment and stigma will persist indefinitely. (ER-26–28, Shilling Decl. ¶¶ 15–18, 21–22, 24; ER-34–37, Compl. ¶¶ 17, 23–26; ER-41 ¶ D.)

The District Court erred in reducing Plaintiff's claim to a narrow expressive association theory and overlooking the core constitutional violation: the imposition of a penalty for lawful association through the deprivation of a fundamental right. Plaintiff's First Cause of Action does not simply claim that his speech or expressive conduct was chilled. It asserts that his Second Amendment right to bear arms—recognized as fundamental in *Bruen*—was revoked because of his lawful membership in a civic group, absent any showing of personal misconduct or criminal affiliation.

Here, the Sheriff offered no such evidence in the record. Instead, she applied a sweeping, unreviewed classification to disqualify Plaintiff based solely on group membership—forcing him to choose between exercising his right to associate and his right to bear arms. The Constitution prohibits this kind of forced choice. Conditioning the enjoyment of one constitutional right on the abandonment of another is impermissible, and the District Court's failure to recognize the hybrid nature of this violation renders its reasoning legally infirm.

II.    **THE SHERIFF'S UNILATERAL CLASSIFICATION OF BOOZEFIGHTERS AS A CRIMINAL STREET GANG REFLECTS A PURELY LOCAL POLICY—DISTINGUISHING THIS CASE FROM THE DISTRICT COURT'S RELIANCE ON NON-BINDING DISTRICT COURT DECISIONS ON ELEVENTH AMENDMENT IMMUNITY**

31

The Sheriff's revocation of Plaintiff's CCW was not pursuant to any statewide mandate, statute, or classification issued by the California Attorney General. Rather, it was the result of a purely local, extra-statutory policy unilaterally adopted by the San Diego County Sheriff. This was an individual, discretionary act with no foundation in state law or any legislative directive. Moreover, the revocation was not only unauthorized—it was factually baseless. (See ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**.)

This distinction is crucial under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), both of which confirm that when a local official acts pursuant to local policy, the county—not the state—is liable under 42 U.S.C. § 1983. The Sheriff's unilateral decision to label Boozefighters as a "criminal street gang," despite no statutory designation or judicial finding, was purely local in origin and application.

Therefore:

- No California statute authorizes revocation of a CCW solely based on membership in the Boozefighters Motorcycle Club.

- The State of California has not classified the Boozefighters as a gang under Penal Code § 186.22 or any gang database.

32

- Only San Diego County, acting through its Sheriff, adopted this policy and enforced it against Plaintiff.

This local policy, untethered from any state law, cannot cloak the Sheriff in Eleventh Amendment immunity and supports *Monell* liability against the County.

The District Court's reliance on *Scocca v. Smith*, 912 F. Supp. 2d 875 (N.D. Cal. 2012), *Markowitz v. City of Burbank*, CV 24-047 PA (JCx), 2024 U.S. Dist. LEXIS 73037 (C.D. Cal. Apr. 21, 2024), and *Nordstrom v. Dean*, No. CV 15-7607 DMG (FFMx), 2016 WL 10933077 (C.D. Cal. Jan. 8, 2016) (See 12/17/24 Order, ER-8, commencing at line 20), is misplaced, as none of those cases involved a sheriff who, acting without any statewide directive, unilaterally designated a lawful association as a "criminal street gang" and used that fabricated classification to revoke a constitutional right. Unlike the statewide CCW frameworks examined in the Order, Sheriff Martinez's conduct was not the product of any California state law or policy, but rather a county-specific, unwritten policy rooted in her personal determination that Plaintiff's membership in the Boozefighters Motorcycle Club rendered him criminally unfit—despite the absence of any evidence of individual misconduct and lack of any criminal history.

This local policy, created and enforced solely by Sheriff Martinez, is precisely the kind of county-level action that triggers municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), rather than

33

Eleventh Amendment immunity. Because Plaintiff challenges a policy devised and enforced exclusively by the San Diego County Sheriff's Department—untethered from any statewide directive—and because any resulting judgment would be satisfied by the County rather than the State treasury, the District Court erred in extending Eleventh Amendment sovereign immunity, which has no application to such county-level policymaking under well-established constitutional and jurisprudential principles.

Because this revocation sprang from a local "gang affiliation" rule devised solely by Sheriff Martinez, and because any liability would be borne by the County rather than the state treasury, the reasoning behind Eleventh Amendment immunity in *Scocca*, *Markowitz*, and *Nordstrom* does not apply. Those decisions addressed the ordinary, statewide CCW framework or statewide entities, not a county-level custom that labels a lawful organization "criminal" and subjects its members to permit revocation. Under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), such a locally generated policy supports municipal liability, not sovereign immunity.

In *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), the Ninth Circuit refined the arm-of-the-state inquiry by examining (1) the State's intent, (2) the degree of State control, and (3) any effect on the state treasury. In Kohn, the State Bar operated under a unified framework in which one statewide entity issued,

34

investigated complaints, and revoked licenses. Here, by contrast, a single sheriff—one of 58 across California—unilaterally labeled the Boozefighters Motorcycle Club "criminal" with no oversight, directive, or adoption by the State. Neither California nor any of its agencies has formally recognized Boozefighters as an "outlaw" organization, and any resulting judgment would be borne by the County rather than state coffers. (ER-24, Shilling Decl. ¶¶ 2–3; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**.) The Sheriff alone decides who is granted or revoked a CCW permit, while the State merely provides a uniform application form (asking about prior CCW revocations) and maintains a database of issued and revoked licenses. Because the State never mandated the Sheriff's classification of Boozefighters as "criminal," *Kohn*'s framework for determining whether an entity is part of the State does not apply to this purely local policy. This locally developed policy was never adopted by the State.

The request for relief thereby targets the official who can actually grant or revoke the permit, and no state official holds that power. Consequently, only the sheriff can restore a permit once she has revoked it.

In *Scocca v. Smith*, 912 F. Supp. 2d 875 (N.D. Cal. 2012) (a case heavily relied upon by Defendants and the district court), the court concluded that a sheriff carrying out California's CCW licensing scheme primarily acted on the State's behalf based on the uniform procedures and reporting requirements under a "may

35

issue" regime. However, *Scocca* predated *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), which replaced "may issue" with a "shall issue" standard, thereby imposing a more objective framework for CCW permitting. Since *Scocca* did not address *Bruen*, it offers no guidance on whether a sheriff's subjective classification of a lawful group as "criminal" can justify revoking an already-issued permit.

Moreover, *Scocca* involved a sheriff who merely enforced uniform statewide regulations, not a sheriff who devised her own policy—entirely disconnected from any state directive—to label a lawful club "criminal" and revoke a CCW on that basis. If the sheriff truly operated as a State official, this policy would appear in all 58 counties, yet no other county revokes CCWs in this manner.

*Nordstrom v. Dean*, No. CV 15-7607 DMG (FFMx), 2016 WL 10933077 (C.D. Cal. Jan. 8, 2016) likewise found that a sheriff acts on behalf of the state when administering ordinary CCW requirements. But that case too dealt with routine statutory criteria, not a personalized local policy revoking an existing CCW by declaring a legitimate association "criminal." *Nordstrom* thus does not support treating the sheriff's unique gang-labeling practice as state action.

*Bruen* emphasizes that CCW licensing must rely on objective criteria, which precludes revocations driven by mere disapproval of lawful associations. Because qualified immunity does not extend to a sheriff in her official capacity, the sheriff

36

here cannot assert that the law was unclear. Nothing about the objective criteria that supported Plaintiff's original CCW changed; the only difference was the sheriff's election and her unilateral decision to equate lawful group membership with criminal behavior. Under *Bruen*, such a subjective rationale for revocation is constitutionally invalid from the outset.

None of the authorities cited by the District Court addressed a scenario in which a sheriff, acting without direction from the California Attorney General or any statutory authority, independently declared a lawful organization "criminal" and then enforced that label through a local revocation policy. Here, Sheriff Martinez unilaterally classified the Boozefighters Motorcycle Club as a "criminal street gang" under Cal. Penal Code § 186.20 et seq., despite no charges or convictions under that statute, and implemented a county-specific policy to revoke CCWs from anyone with what she subjectively deemed a "close nexus" to the group. This policy is neither grounded in state law nor part of any uniform statutory scheme; it is a localized construct devised entirely by the Sheriff.

Moreover, unlike the cases relied on by the District Court, which involved routine denials of initial CCW applications based on statewide standards, the present case involves the revocation of an already-issued permit—based solely on a sheriff's *ad hoc* moral judgment about a lawful association. Since *Bruen* invalidated "good cause" requirements and confirmed that the CCW process is

largely ministerial, any discretionary revocation must rest on a lawful basis. Sheriff Martinez's unilateral designation and resulting policy were not authorized or endorsed by the State and fall outside the scope of Eleventh Amendment immunity. Under *Monell*, the County is liable for constitutional deprivations caused by a final policymaker acting under local authority, which is precisely what occurred here.

### A. Local "Criminal Gang" Designation Separates This Case from Those Relied Upon by The District Court

Even if Sheriff Martinez claims she was acting as an instrument of the State, her reliance on "good moral character" for revoking Plaintiff's CCW—solely because of his membership in a motorcycle club—cannot be attributed to any official state policy. Under *Bruen*, the central question is whether the individual can legally own a firearm, not whether a sheriff disapproves of the person's associations.

In each of the cases Sheriff Martinez cites, courts discussed sheriffs enforcing the uniform CCW regime, without creating an independent classification to deem lawful associations "criminal." Here, Plaintiff's CCW was revoked after Martinez unilaterally labeled Boozefighters a "criminal street gang" and announced that members or affiliates cannot hold a permit. That is a purely local policy choice untethered from any statewide directive or recognized prosecutorial

action under Cal. Penal Code § 186.20. Nor does it serve any legitimate "good moral character" function, especially after *Bruen*'s emphasis on objective criteria. Instead, it reflects the sheriff's subjective belief that membership in this motorcycle club is disqualifying, even absent criminal wrongdoing, and contrary to the facts.

Finally, "good moral character" cannot be twisted into a personal repudiation of someone's lawful associations. *Bruen*'s requirements for objective, historically based firearm regulation do not sanction a revocation predicated solely on the sheriff's animus toward a motorcycle club. This targeting of disfavored associations is the very sort of local, discretionary overreach that cannot be dismissed under state-actor immunity. The District Court's reliance on cases involving routine administration of state CCW rules overlooks the singular fact that Sheriff Martinez's policy was self-fashioned, uniquely local, and entirely outside any statewide mandate. The result is a constitutional claim properly directed at the County, not at an immune state entity.

The District Court failed to recognize that labeling Boozefighters a "criminal street gang" is not part of any state firearm regulation or official law enforcement directive. Rather, the classification arose unilaterally from the San Diego County Sheriff's Office. There is no evidence that any other California county adopted a similar policy, nor any indication that the State ratified the designation. This purely

local decision inflicted constitutional harm—revoking Plaintiff's permit on the basis of lawful association without any crime being committed--- and the Sheriff knew this because Plaintiff's criminal history is spotless. (ER-24, Shilling Decl. ¶ 1-3; ER-33-35, Compl. ¶¶ 2 16-17, 21.)

## B. The District Court Erred in Dismissing Claims Under Eleventh Amendment Immunity

The District Court improperly relied on an outdated legal framework, ignoring binding Ninth Circuit authority under *Kohn*, and failed to account for the purely local nature of Sheriff Martinez's CCW revocation policy, and the lasting stigma from such revocation.

In dismissing Plaintiff's claims on Eleventh Amendment grounds, the District Court committed legal error by relying primarily on *Scocca v. Smith*, 912 F. Supp. 2d 875 (N.D. Cal. 2012)—a decision rendered more than a decade before the Ninth Circuit's controlling opinion in *Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023), which replaced the outdated immunity framework applied in *Scocca* with a definitive three-factor test.

*Scocca* used a now-defunct categorical approach, whereas *Kohn* mandates a three-factor test to determine whether an official acts as an "arm of the state." Had the District Court properly applied *Kohn*, it would have found no immunity because the challenged policy—Sheriff Martinez's designation of Boozefighters as

40

a criminal gang—is a wholly local invention, unsupported by state law, unsanctioned by state officials, and financed entirely at the county level.

### C. Kohn's Three-Factor Test Controls, Not Scocca

*Kohn v. State Bar of California*, 87 F.4th 1021 (9th Cir. 2023) sets forth a clear framework: courts must assess (1) the State's intent regarding the official's status, (2) the degree of State control over the function at issue, and (3) the financial impact on the State treasury. *Id.* at 1031. Applying those factors to Sheriff Martinez's conduct compels the conclusion that she was acting on behalf of the County of San Diego, not the State of California.

<p style="margin-left:2em">i.     <u>Legislative Intent: Sheriffs Are County Officers</u></p>

Under California law, sheriffs serve as county officers, as designated by Article XI of the California Constitution. Government Code § 25303 further establishes that sheriffs are subject to county oversight and fiscal control. There is no statute or legislative intent indicating that the State has contemplated or endorsed a sheriff's policy classifying certain groups—such as labeling a lawful motorcycle club as "criminal."

With respect to concealed carry weapon (CCW) licenses, California Penal Code § 26160 requires each licensing authority—including county sheriffs—to maintain a written policy that outlines the requirements for issuing a CCW license. This policy must be made publicly available to ensure transparency in both the

41

application and revocation processes. In this case, however, the Sheriff's policy concerning alleged "criminal gang affiliation" was not disclosed to the public. Not even the identities of the organizations deemed "gangs" were made available. At a minimum, one would expect the existence of a public "blacklist" or criteria identifying such groups—yet no such information was provided, leaving applicants like Plaintiff vulnerable to arbitrary, undisclosed classifications.

The authority to approve, deny, and revoke concealed carry weapon (CCW) licenses resides solely with the county sheriff. Cal. Penal Code §§ 26150, 26195, 26202. These statutes make clear that the sheriff exercises independent discretion in determining whether to issue or revoke a CCW license. Although California Penal Code § 26195 requires the sheriff to report revocations to the Department of Justice, this reporting is a ministerial obligation—not a mechanism of state oversight or control. The decision to revoke a license is made exclusively at the county level, without any substantive review or directive from the State. There is no statutory mandate, state regulation, or official guidance identifying what associations or affiliations qualify as disqualifying under the law. As such, the revocation of Plaintiff's CCW based on his lawful membership in the Boozefighters Motorcycle Club reflects a purely local policy, not a state action.

Additionally, there is no state-level control, oversight, or statutory guidance defining what constitutes sufficient grounds for revoking a CCW license based on

42

group affiliation or "gang membership." The authority to revoke remains entirely at the discretion of the county sheriff, further reinforcing the localized nature of the policy at issue. This absence of statewide standards or uniform criteria underscores that the decision to revoke Plaintiff's CCW—based solely on his affiliation with a lawful motorcycle club—was a unilateral, extra-statutory act of local policymaking, not one traceable to any state mandate.

Although the California Department of Justice (DOJ) collects a fingerprint verification fee, the bulk of the CCW licensing fees are retained and used at the county level. As codified in California Penal Code § 26190, the county sheriff— acting as the licensing authority—is authorized to charge an additional fee to cover the local costs of processing, issuing, and enforcing CCW licenses, including administrative expenses and required notices. Cal. Penal Code § 26190(b)(1). These fees are transmitted directly to the county treasury and may be increased to reflect local administrative costs. Cal. Penal Code § 26190(c).

Moreover, only the initial fingerprint processing fee is remitted to the DOJ, and even that is statutorily capped to reflect the department's direct processing costs. Cal. Penal Code § 26190(a)(1). In contrast, the local fee structure supports and sustains the CCW program within each sheriff's department, reaffirming that licensing and enforcement are county-administered functions. The statute further allows counties to charge for amendments and psychological assessments, so long

43

as the amount does not exceed the "reasonable costs to the licensing authority"—i.e., the county sheriff. Cal. Penal Code § 26190(d)-(e).

In short, CCW licensing is operationally and fiscally a local function, with no funding or financial liability borne by the State. This statutory scheme further supports the conclusion that CCW revocation decisions—such as the one at issue here—are local in origin, execution, and consequence, and thus do not implicate Eleventh Amendment immunity.

<div style="text-align:center">

ii.     <u>Degree of State Control: Zero Oversight of the Gang Classification Policy</u>

</div>

The State plays no role in classifying Boozefighters or any other organization as a criminal gang for purposes of CCW revocation. The Attorney General has not adopted such a designation, nor has the legislature incorporated Boozefighters into any statutory list under Cal. Penal Code § 186.20. The classification arose solely from Sheriff Martinez's discretion as clearly indicated in **Exhibit "1"** to the Complaint. (ER-43) Different counties apply different criteria for issuing and revoking CCWs, confirming that policy control rests with each local sheriff.

Defendants incorrectly portray CCW licensing as a centralized state function. In fact, California's concealed carry system is administered on a county-by-county basis. Each of the State's 58 counties maintains its own distinct CCW

<div style="text-align:center">44</div>

policy, shaped by the elected sheriff's discretion. While state law sets baseline requirements—such as background checks and training certifications—the authority to issue, deny, or revoke permits rests entirely with the county sheriff. This decentralized structure underscores that licensing is a local function, not a state-directed enterprise.

If Plaintiff were to apply for a CCW in a neighboring jurisdiction, a different sheriff might reach an entirely different conclusion. This confirms that the challenged classification is a county-level policy, not a state mandate.

The discretion afforded sheriffs in CCW matters is no different than the discretion exercised by local law enforcement in traffic enforcement or zoning administration. Though the California Vehicle Code applies statewide, whether and how to cite a motorist is a matter of local enforcement discretion. The same principle applies here: state statutes provide a general framework, but sheriffs determine how to interpret and enforce subjective standards like "dangerousness" or "moral character." This underscores that the decisions at issue are fundamentally local in nature and not attributable to the State for purposes of Eleventh Amendment immunity.

No state actor has reviewed, adopted, or ratified San Diego County's gang classification policy or the specific revocation at issue. The December 4, 2023, revocation letter sent to Plaintiff is the product of a purely local decision by a

45

county official. This absence of state involvement is determinative under *Kohn*, confirms that the Sheriff was not acting as an "arm of the state."

### iii.    Financial Liability: Entirely County-Funded

Concealed carry licensing in San Diego County is administered and funded at the local level—through application fees collected and retained by the County Sheriff's office. Under this framework, any judgment arising from Plaintiff's claims would be satisfied by county funds, not the state treasury. This fact alone is dispositive under *Kohn*, and defeats Defendants' assertion of Eleventh Amendment immunity.

Of particular note, there is no evidence—nor even a suggestion—that the State of California has endorsed, accepted, or assumed responsibility for the challenged policy. One would reasonably expect, if the State truly treated CCW licensing decisions as its own, a statement from the California Attorney General confirming that the State accepts full legal and financial responsibility for all sheriff CCW policies, pays for the legal defense, and will satisfy any resulting judgments. No such declaration exists. The absence of state ratification or participation reveals the flaw in the District Court's reasoning. If Sheriff Martinez truly acted as an arm of the State, then the CCW process would resemble the statewide Department of Motor Vehicles model used for driver's licenses— uniform, state-administered, and subject to state-level control. But California's

CCW regime is the opposite: decentralized, locally administered, and governed by sheriff-by-sheriff discretion. The logic of the District Court's decision collapses under the weight of that reality.

In sum, the District Court's failure to apply the *Kohn* test—focusing instead on outdated precedent like *Scocca v. Smith*—was reversible error. All three factors point to local—not state—action here. The Sheriff's policy was locally created, locally applied, and locally funded. The decision to revoke Plaintiff's CCW based on a unilateral "gang" label was neither guided nor ratified by the State. As such, Eleventh Amendment immunity does not apply.

### III. MISCHARACTERIZING SHERIFF MARTINEZ AS A STATE ACTOR UNDERMINES *MONELL* AND INVITES SYSTEMIC § 1983 EVASION

Treating the Sheriff as a "state actor" for Eleventh Amendment purposes not only distorts the facts of this case but also threatens to gut the core accountability framework of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). If allowed to stand, the District Court's ruling will embolden all 58 counties in California to claim immunity in virtually every § 1983 action involving sheriff policy—setting civil rights litigation back decades and eviscerating the principle that municipalities can be held accountable for their own unconstitutional practices.

Defendants' position that Sheriff Martinez acted on behalf of the State is both factually false and legally dangerous. This attempt to rebrand a purely local policy decision as "state action" creates a roadmap for avoiding accountability. *Monell* squarely rejects this tactic, holding that municipalities do not share the State's Eleventh Amendment immunity and can be sued directly for constitutional violations committed by their final policymakers. (*Id.* at 690 n.54.)

California's CCW regime is decentralized by design. While the State sets minimum criteria—such as training and background checks—the authority to issue, deny, or revoke a CCW permit rests exclusively with the county sheriff. See Cal. Penal Code §§ 26150, 26195, 26202. Each county maintains its own written CCW policy, as mandated by § 26160. These policies are not uniform; they vary significantly based on the sheriff's discretion. In practice, there are fifty-eight sheriffs and fifty-eight distinct licensing regimes.

Sheriff Martinez's policy—branding Boozefighters a "criminal street gang" and revoking Plaintiff's CCW on that basis—was entirely local. No California statute, Attorney General directive, or statewide database identifies Boozefighters as a criminal gang. This classification was made unilaterally by Sheriff Martinez and applies only in San Diego County. If Plaintiff lived elsewhere, his association with Boozefighters might not have affected his licensure at all. That fact alone proves the policy stops at the county line and is not "state action."

48

By mischaracterizing this local discretion as state-mandated, the District Court essentially granted blanket immunity to all county sheriffs—allowing municipalities to sidestep *Monell* liability whenever their own elected officials violate constitutional rights. That framework destroys § 1983 as a viable remedy for local misconduct. Labeling the Sheriff a "state actor" invites abuse: counties can commit civil rights violations through their sheriffs and then avoid liability by shifting blame to the State.

This Court should reject such a hollow interpretation. California law treats sheriffs as county officers subject to county supervision. See Cal. Const., art. XI; Cal. Gov't Code § 25303. Sheriffs regularly serve as final policymakers in critical areas like jail administration, patrol practices, and CCW licensing. *Monell* squarely places liability on municipalities for constitutional injuries resulting from such policies.

A sheriff cannot simultaneously be deemed a state actor (for purposes of immunity) and a local policymaker (immune from § 1983). That dichotomy leaves no one answerable when the Constitution is violated. If the Sheriff's actions were truly state-directed, then the State must be joined as a necessary party. But the facts reveal what the law requires: the CCW revocation at issue was a purely local act by a county official executing a county policy. Immunity does not apply, and the fact that a new law was passed is irrelevant to the analysis. Reversal is required.

## IV. PLAINTIFF'S CLAIM REMAINS JUSTICIABLE AND IS NOT MOOT

Contrary to the District Court's conclusion, Plaintiff's Second Amendment claim is not moot. While Defendants argue that Senate Bill No. 2's repeal of the "good moral character" requirement eliminates any live controversy, this contention fails to address the continued existence of the very policy that led to the unconstitutional revocation of Plaintiff's CCW license. The legislative language may have changed, but the discretionary enforcement mechanism—now couched in the equally vague "demonstrated dangerousness" standard—remains in place, and Plaintiff's injury remains ongoing.

No public policy change has been announced, no retraction issued, and no corrective action taken. The revocation remains in full effect, along with the associated stigma. *Bruen* demands objective, historically grounded licensing standards—not vague, subjective criteria that invite arbitrary enforcement. The County's revocation of Plaintiff's CCW, based solely on his lawful association with a civic group not proscribed by law, violates *Bruen*'s core mandate.

S.B. 2's revision from "good moral character" to "reasonably unlikely to be a danger to self, others, or the community" is a distinction without a difference. Both standards rely on discretionary, amorphous judgments by local officials. Here, the revocation was based entirely on Plaintiff's association with a lawful

organization—without any showing of personal misconduct, criminal activity, or even a violation of CCW conditions. The classification of Boozefighters as a gang is unsupported by law, and the new statutory language offers no assurance that the same flawed rationale won't be applied again.

The injury is not hypothetical or speculative. Plaintiff's revoked license remains on the record. Any future application for a CCW—whether in San Diego or elsewhere—will require him to disclose the revocation. (ER-26-28, Shilling Decl. ¶¶ 15-18, 21-22, 24; ER-34-27, Compl. ¶¶ 17, 23-26, **Exhibits "2" & "3"**, ER-41 ¶ D.) That disclosure subjects him to automatic heightened scrutiny and increases the likelihood of denial. The revocation operates as a permanent penalty, one that continues to stigmatize Plaintiff and chill his constitutional rights.

Moreover, this situation is plainly capable of repetition yet evading review. CCW licenses are of limited duration. The discretionary nature of the licensing regime allows revocations to occur just before expiration, effectively mooting challenges before courts can intervene. The case law is clear: "A case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013). As long as Plaintiff faces reputational harm, denial risks, and the chilling effects of an unlawful revocation, this Court can and must grant relief.

51

As reaffirmed in *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000), voluntary cessation or superficial legislative amendments do not render a claim moot unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." That is not the case here. Plaintiff's permit remains revoked. The gang classification persists. The County continues to apply the same associational logic to current licensing decisions.

Finally, to the extent that Plaintiff seeks declaratory relief, the claim is independently justiciable. Declaratory relief is specifically intended to resolve ongoing constitutional injuries where injunctive relief may not be appropriate or available. See 28 U.S.C. § 2201; *Steffel v. Thompson*, 415 U.S. 452 (1974).

In sum, this case is not moot. The constitutional injury is ongoing, the underlying policy remains active, and Plaintiff retains a concrete stake in the outcome. Judicial intervention is both proper and necessary.

## V. PLAINTIFF'S CLAIM FOR MONETARY DAMAGES FORECLOSES ANY ARGUMENT OF MOOTNESS

Even if the Court were to find that the revocation has technically expired or that Senate Bill No. 2 has modified the statutory framework going forward, Plaintiff's claim for monetary damages under 42 U.S.C. § 1983 independently preserves the justiciability of this action. The injury is not moot. The revocation resulted in a concrete deprivation of rights and reputational harm, both of which

remain actionable. Furthermore, the ongoing stigma attached to Plaintiff in law enforcement and CCW databases persists and is redressable through equitable relief. The Court retains jurisdiction to remedy both the past constitutional violation and its continuing collateral consequences. (ER-26-28, Shilling Decl. ¶¶ 15-18, 21-22, 24; ER-41, Compl. ¶ D.)

Plaintiff seeks compensation for constitutional injuries already inflicted by Defendants' conduct—namely, the deprivation of his Second Amendment right to carry a firearm and the punishment of his First Amendment right to freedom of association. Once a violation has occurred, and once damages are sought for that completed harm, a defendant cannot moot the claim by changing the law or halting the offending conduct. See *Uzuegbunam v. Preczewski*, 592 U.S. 279, 290 (2021) ("Nominal damages provide the necessary redress for a completed violation of a legal right."); see also *Carey v. Piphus*, 435 U.S. 247, 266 (1978).

Here, the Sheriff revoked a lawfully issued CCW license based solely on Plaintiff's protected association. That revocation, once completed, gave rise to a compensable harm, regardless of whether the permit has since expired or whether the statute has changed.

Plaintiff alleges and substantiates tangible losses: reputational damage, legal disability in future CCW applications, emotional distress, and loss of access to a self-defense mechanism during the period of revocation. These are not hypothetical

53

harms—they are realized and quantifiable injuries that § 1983 was specifically designed to redress.

Because Plaintiff has a viable damages claim, his case remains live and justiciable. As the Ninth Circuit has held, "A valid claim for damages saves a case from mootness." *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999); see also *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1173 (9th Cir. 2002) ("The burden of demonstrating mootness is a heavy one."). Defendants cannot escape liability by pointing to statutory amendments while ignoring the constitutional injuries they inflicted under the policies in force at the time.

Accordingly, the District Court erred in dismissing the case as moot without first addressing Plaintiff's claim for damages. This alone warrants reversal and remand.

## VI. THE DISTRICT COURT ERRED IN DENYING JOINDER OF THE STATE

If, as the District Court concluded, Sheriff Martinez acted on behalf of the State of California in revoking Plaintiff's CCW permit, then the State is the proper party to defend against the alleged constitutional violation. Plaintiff expressly moved under Rule 19(a) to join the State, anticipating that dismissal of the County would otherwise leave him without a remedy. The District Court denied this

54

request, creating a constitutional Catch-22: Plaintiff has suffered a live, ongoing injury, yet no defendant remains to provide redress.

The District Court's dual rulings—granting Eleventh Amendment immunity while denying joinder—produce a jurisdictional vacuum where constitutional violations are acknowledged but left unremedied. This contravenes the remedial purpose of 42 U.S.C. § 1983.

A plaintiff cannot be forced into a procedural dead-end: barred from suing the County on grounds that the Sheriff is a "state actor," while also being barred from suing the State because it was never joined. This either-or framework— permitting neither—defies both logic and fairness.

At a minimum, the District Court should have required the State of California to appear or weigh in before accepting Defendants' claim that the Sheriff was acting on behalf of the State. Instead, Defendants unilaterally cast the State as the responsible party—effectively throwing the State under the bus— without any representation, consent, or acknowledgment from the State itself.

There is no indication in the record that the Attorney General of California agreed with Defendants' position, accepted liability, or offered to provide a legal defense or satisfy any resulting judgment. That silence speaks volumes. If, in fact, the Sheriff were truly enforcing a state policy, one would reasonably expect a formal statement from the State accepting responsibility, much like it does in state-

55

administered programs such as driver's licensing. No such representation exists here.

The District Court's failure to demand the State's input before adopting the "state actor" theory was a significant procedural and substantive error—effectively assigning sovereign immunity and jurisdictional control to an entity not present before the Court. This deprived Plaintiff of a fair opportunity to obtain a remedy and ignored the basic principles of notice and due process.

The correct approach was either to reject the Sheriff's claim of immunity and permit suit against the County, or to grant Plaintiff's Rule 19(a) motion and require joinder of the State. The District Court's failure to do either mandates reversal, especially since the false accusation is still stigmatizing, and equitable relief on this issue was requested. (ER-26-28, Shilling Decl. ¶¶ 15-18, 21-22, 24; ER-39, 40-41, Compl. ¶¶ 41, 50, B. - D.)

## **CONCLUSION**

Plaintiff's claims are not moot. The revocation of his CCW license—based on an undisclosed, extra-statutory classification of the Boozefighters Motorcycle Club as a "criminal street gang"—remains in full effect. The County has neither rescinded the policy nor retracted the stigmatizing rationale. Indeed, Plaintiff's recent application for renewal was denied after the District Court's ruling, confirming that the injury is ongoing and the unconstitutional policy continues to

56

be enforced under the guise of "demonstrated dangerousness." The stigma attached to the revocation permanently impairs Plaintiff's ability to obtain a CCW in the future, rendering both declaratory and injunctive relief necessary.

This case presents a hybrid constitutional violation that implicates both the First Amendment right to associate and the Second Amendment right to bear arms. The government may not force Plaintiff to choose between exercising one fundamental right or forfeiting another. The District Court erred in finding the Sheriff to be an arm of the State under Eleventh Amendment immunity, in dismissing the County, and in failing to apply the controlling *Kohn* framework. It also erred by ignoring the true nature of Plaintiff's First Amendment claim—as punishment for lawful association—not as interference with association. For these reasons, Plaintiff–Appellant Kenneth Charles Shilling respectfully requests that this Court:

1. Reverse the District Court's order finding Sheriff Martinez immune under the Eleventh Amendment;

2. Reverse the dismissal of the County of San Diego as a defendant;

3. Hold that sheriffs act as final local policymakers for CCW issuance and revocation, making their policies actionable under 42 U.S.C. § 1983 pursuant to *Monell*;

4.  Hold that Plaintiff's First and Second Amendment claims are not moot because the revocation remains in effect and continues to impose legal and reputational harm;

5.  Grant declaratory relief finding that the revocation of Plaintiff's CCW license, based solely on his lawful association with the Boozefighters Motorcycle Club, violated his rights under the First and Second Amendments to the United States Constitution.

Remand with instructions to:

1.  Reinstate Plaintiff's claims under the First and Second Amendments;

2.  Allow Plaintiff to file a supplemental and amended complaint pursuant to incorporate ongoing harms, including the denial of Plaintiff's CCW renewal following the District Court's ruling, thereby ensuring the pleadings reflect the continuing nature of the constitutional injuries.

3.  Grant injunctive relief requiring the County (or State, if joined) to purge the unconstitutional revocation from Plaintiff's record and cease reliance on the "gang affiliation" rationale absent statutory or adjudicative support;

4.  Award declaratory relief confirming that the revocation was unconstitutional under both the First and Second Amendments;

5.  In the alternative, should the Court conclude that the Sheriff is a state actor entitled to Eleventh Amendment immunity with respect to CCW issuance

58

and revocation, then the State of California is a necessary party under Fed. R. Civ. P. 19(a), and the Sheriff must remain a defendant for purposes of equitable relief. Plaintiff respectfully requests leave to amend and supplement the Complaint to: (1) join the State as a defendant; and (2) plead around the immunity bar by refining claims for equitable relief against both the Sheriff in her official capacity and the State, and to plead the ongoing harm resulting from the denial of plaintiff's CCW application.

6. Award costs of the appeal

Dated this Thursday, March 27, 2025

Respectfully submitted,

/s/ *Gary W. Gorski*
Gary W. Gorski
Attorney for Appellant/Plaintiff

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 25-291

I am the attorney or self-represented party.

**This brief contains** 12,955 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____ .

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Gary W. Gorski **Date** 3/27/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at *forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*

## CERTIFICATE OF SERVICE

### Certificate of Service for Electronic Filing

**9th Cir. Case Number: 25-291**

I hereby certify that I electronically filed the attached document and Excerpts of Record on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Signature** /s/ *Gary W. Gorski*  **Date:** Thursday, March 27, 2025

61